## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mong C. *ex rel.* Uphaphon P.,

        Petitioner,

v.

Markwayne Mullin, *Secretary,*
*Department of Homeland Security*;
Todd M. Lyons, *Acting Director,*
*Immigration and Customs Enforcement*;
and David Easterwood, *Acting Director,*
*St. Paul Field Office Immigration and*
*Customs Enforcement*,

        Respondents.

Civil No. 26-2398 (DWF/ECW)

### MEMORANDUM
### OPINION AND ORDER

### INTRODUCTION

This matter is before the Court on Petitioner Mong C.'s petition for a writ of

habeas corpus (the "Petition"). (Doc. No. 1.) Respondents oppose. (Doc. No. 5.) For

the reasons set forth below, the Court denies the Petition.

### BACKGROUND

Petitioner is a native of Laos who was born in Thailand. (Doc. No. 1 ¶ 1, 28.) He

entered the United States in November 1980, at just five-months-old. (*Id.*) He and his

parents were admitted as refugees escaping Hmong persecution in Laos after the Vietnam

War. (*Id.*) In May 1990, he adjusted his status to lawful permanent resident ("LPR").

(*Id.* ¶ 28; Doc. No. 6 ¶ 5.)

Petitioner has a criminal history.  In 2001, Petitioner pled guilty to second-degree murder committed for the benefit of a gang.  (Doc. No. 1 ¶ 30; Doc. No. 6-2 at 1.)  On April 15, 2002, Petitioner was served a Notice to Appear charging him with removability.  (Doc. No. 6 ¶ 7.)  On December 13, 2004, as a result of the criminal conviction, Petitioner lost his LPR status and was ordered removed from the United States.  (*Id.* ¶ 8; Doc. No. 6-1.)  On January 14, 2019, Petitioner was released from his prison sentence and turned over to ICE custody for removal.  (Doc. No. 6 ¶ 9.)  However, because the Department of Homeland Security ("DHS") was unable to get travel documents, Petitioner was released on an Order of Supervision ("OSUP") on April 15, 2019.  (*Id.* ¶ 10.)

On January 2, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner in front of his house in Fridley, Minnesota.  (Doc. No. 1 ¶ 5.)  On February 19, 2026, Petitioner filed his first petition for a writ of habeas corpus.  (*See id.*)  Respondents argued that conditions had changed because Laos had recently begun issuing travel documents.  (*See* Doc. No. 6 ¶ 11.)  Explaining that Respondents did not have a concrete removal plan, the judge granted that petition and ordered Respondents to release Petitioner subject to the conditions of his 2019 OSUP.  *Mong C. v. Noem*, No. 26-cv-1541 (D. Minn. filed Feb. 24, 2026).  Petitioner was released from ICE custody on February 25, 2026.  (Doc. No. 6 ¶ 15.)

On March 2, 2026, the Embassy of the Lao People's Democratic Republic issued a travel document for Petitioner.  (*Id.* ¶ 16.)  Then, in mid-April 2026, Petitioner received a letter ordering him to appear at the Whipple Federal Building.  (Doc. No. 1 ¶ 8.)  The

letter stated that the reason for the appointment was removal. (*Id.*) On April 28, 2026, at the scheduled check-in, Petitioner was again detained by ICE. (*Id.* ¶¶ 9, 10.) At that interaction, Petitioner was served with Form 71-091, a Notice of Revocation of Release, explaining that his release was being revoked because ICE had obtained travel documents and informing him that his removal was scheduled to occur by May 31, 2026. (Doc. No. 6-4 at 1-2.) Petitioner's niece was present and asked the ICE agents for an administrative arrest warrant or the travel documents, neither of which the agents provided. (Doc. No. 1 ¶ 9.) Petitioner was then given an opportunity to respond to the reasons for revocation and provided a written statement that he was cooperative and wanted to be released to spend time with family. (Doc. No. 6-4 at 3.) Petitioner was taken into custody at Whipple. (Doc. No. 1 ¶ 10.) He is currently in detention at the Sherburne County Jail in Elk River, Minnesota. (Doc. No. 6 ¶ 19.)

The Petition was filed the same day, April 28th. (Doc. No. 1 at 17.) The Petitioner is brought by Petitioner's niece as a next friend and with the assistance of counsel. (*Id.* ¶ 19.) Petitioner asserts that his detention is unlawful because it violates the Immigration and Nationality Act, the Due Process Clause of the Fifth Amendment, the Fourth Amendment, and the *Accardi* doctrine. (*Id.* ¶¶ 49-68.) He requests immediate release from ICE detention. (*Id.* at 16.)

## DISCUSSION

A district court may provide habeas relief to a person who is being detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). That authority includes jurisdiction to hear habeas challenges to immigration-related detention.

3

*Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900-01 (D. Minn. 2020).  The burden is on the petitioner to prove illegal detention by a preponderance of the evidence.  *See Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

Respondents invoke 8 U.S.C. § 1231 to justify Petitioner's detention.  (Doc. No. 7 at 4.)  Section 1231 provides that a noncitizen be detained following an order of removal. 8 U.S.C. § 1231(a)(2)(A).  Petitioner does not dispute that he is subject to a removal order.  He is therefore subject to § 1231's mandatory detention scheme.

Detention under § 1231 is time limited.  A noncitizen with a final removal order can be detained for only ninety days, absent special circumstances warranting longer detention.  8 U.S.C. § 1231(a)(1), (a)(3); *see also, e.g.*, *Goaner W. v. Sec'y of Homeland Sec.*, No. 18-cv-1811, 2019 WL 11648600, at *3 (D. Minn. May 10, 2019) (discussing the time limits imposed by § 1231).  Because Respondents were not able to obtain travel documents previously, he was released on an OSUP as to not violate the time limits.  If a noncitizen is detained pursuant to § 1231 but then later released, there are only certain circumstances when ICE may revoke the OSUP.  The revocation of release is the focus of this case.

Relevant here, ICE may revoke a noncitizen's OSUP if circumstances have changed such that there is a significant likelihood that the noncitizen will be removed in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(2) (2026); *see also Zadvydas*, 533 U.S. at 689, 701 (finding that detention of a noncitizen is warranted if the government shows that removal is reasonably foreseeable).  ICE bears the burden to show that

4

changed circumstances justify the redetention.  *E.g.*, *Garrison G. v. Bondi*, No. 26-cv-172, 2026 WL 157677, at *3 (D. Minn. Jan. 17, 2026).

Petitioner challenges whether his removal is reasonably foreseeable.  His removal was not reasonably foreseeable before ICE obtained travel documents.  However, ICE has now obtained travel documents and plans to remove Petitioner this month.  That is reasonably foreseeable removal.  *See, e.g.*, *Kamara v. Kavanaugh*, No. 18-cv-1520, 2018 WL 4030645, at *2 (D. Md. Aug. 22, 2018) (finding that petitioner's removal was reasonably foreseeable because ICE had obtained travel documents); *Ashok v. Price*, No. 19-cv-160, 2019 WL 4702637, at *6 (W.D. Tex. Sep. 26, 2019) (same, collecting cases); *cf. Yee S. v. Bondi*, 806 F. Supp. 3d 894, 901-02 (D. Minn. 2025) (granting habeas relief because ICE was merely in the process of obtaining travel documents).  It was not unlawful for Respondents to revoke Petitioner's release for changed circumstances.

Relatedly, Petitioner challenges the process Respondents took when revoking the OSUP.  Upon revocation of a noncitizen's release, the noncitizen must be notified of the reasons for revocation and afforded an initial informal interview to respond to the reasons for revocation promptly after their return to custody.  8 C.F.R. § 241.13(i)(3) (2026). Petitioner was served with a Notice of Revocation of Release that informed him that the procurement of travel documents was the reason for the revocation of his release.  (Doc. No. 6-4 at 1.)  Petitioner was then given an informal interview, during which he had the opportunity to respond to the reasons.  (*Id.* at 3.)  Petitioner has not shown that Respondents violated regulatory procedure or procedural due process in detaining him.

Finally, Petitioner challenges his arrest under the Fourth Amendment for lack of a judicial warrant.  Fourth Amendment analysis centers around reasonableness and is on a case-by-case basis.  *See, e.g.*, *Lange v. California*, 594 U.S. 295, 301-02 (2021).  Here, Petitioner has not shown that his arrest was objectively unreasonable.  As explained above, immigration officers have authority to revoke an OSUP and return the noncitizen to custody.  *See* 8 C.F.R. § 241.13(i)(2) (2026).  The warrant on which this custody is based is the warrant of removal that stemmed from the final administrative removal order.  *See id.* §§ 241.2 (explaining the basis of the warrant of removal), 241.3 (explaining that custody under § 1231 is pursuant to a warrant of removal).  Petitioner does not dispute that he was ordered removed, given notice that his appointment was for removal, given a Notice of Revocation that detailed the reasons, and had the opportunity to respond during an informal interview.[1]  Petitioner is not entitled to relief on Fourth Amendment grounds.  The Court denies the Petition without prejudice.

---

[1]    These circumstances are distinct from those in the case relied on by Petitioner, *Orellana v. Nobles County*.  230 F. Supp. 3d 934 (D. Minn. 2017).  There, Petitioner was not subject to an order of removal, and the case therefore did not address revocation of release.

**ORDER**

Based on the foregoing and the record in this case, **IT IS HEREBY ORDERED**

that Petitioner's petition for writ of habeas corpus (Doc. No. [1]) is respectfully **DENIED**

**WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 14, 2026                              s/Donovan W. Frank
                                                 DONOVAN W. FRANK
                                                 United States District Judge